# SUPREME COURT.

## Albany City Savings Bank agt. George Martin, Chauncey S. Titus and others.

*Deed — Covenant to pay mortgage — Insufficient evidence of the insertion of covenant in deed through fraud or mistake.*

Parties who have accepted a deed after having had ample opportunity to examine the same before its acceptance, and also upon action being brought to enforce a covenant in such deed before it was placed on record, are not in a position which entitles them to say that it is not in conformity with their agreement of purchase.

Where the covenant in the deed sustains the action it should not be changed or altered, or adjudged incapable of enforcement on the ground of fraud or mistake, without a trial in which the grantor may be heard.

A deed formally accepted and put on record, and containing in clear and legibly written words the assumption clause or covenants ought to be enforced, is very high evidence of the agreement between the parties at the time of the purchase, and should not be lightly disregarded, nor set aside except upon clear and convincing proof.

The evidence in this case examined, commented on and *held* to be insufficient to maintain the defense, that the covenant in the deed to assume payment of the mortgage, was contrary to the agreement of purchase and was inserted therein by fraud or mistake without the knowledge of the grantees.

*Albany Circuit, May,* 1878.

*Parker & Countryman,* for plaintiffs.

*A. H. Tremaine, Clute* and *Hinman,* for defendants Titus and Stott.

WESTBROOK, *J.* — This action is brought to foreclose a mortgage executed by George Martin and wife to plaintiff, dated

June 15, 1874, and given to secure the sum of $2,500 loaned to Martin by said plaintiff.

On the 26th of February, 1875, Martin and wife conveyed the premises covered by the mortgage to the defendants William Stott and Chauncey S. Titus for the consideration, as expressed in the deed, of $5,000, which deed contains the following clause: "Said premises are conveyed subject to a bond and mortgage on the above-described premises for $2,500 given by George Martin and wife to Albany City Savings Institution, and which bond and mortgage said parties of the second part assume and agree to pay." The deed was recorded in the Albany county clerk's office on the 27th day of February, 1875, in Book of Deeds No. 278, on page 398. The plaintiff seeks to enforce the covenant, the words of which have been given, against the defendants Stott and Titus, and asks, if there be a deficiency upon the sale, for a judgment against them for the amount thereof. They defend upon the ground that the above stipulation in the deed to them was contrary to their agreement of purchase from Martin, and was inserted in the deed by fraud or mistake without their knowledge, and their discovery that it was in was not made until a long while after the deed was recorded. Whether the defendants Stott and Titus are personally liable for any deficiency is the only question which this case presents.

Apart from the questions of fact, which the defense involves, and which will be hereafter considered, there are two legal difficulties, which are these : First. Indisputably the deed under which the defendants took the property, contains the covenant upon which they are sought to be made liable. Can that deed be changed or altered, or be considered or regarded in any form other than as it reads, until it has been reformed in an action brought by these defendants against George Martin, their grantor? Second. Are the defendants, as they admit they have had ample opportunity to examine the deed before it was accepted, and also before it was placed on record, in any position which entitles them to

say that it is not in conformity with their agreement? In regard to the first objection, it can be plausibly at least urged, that the written agreement between the defendants and Martin sustains the action. How can that be changed or altered, or adjudged incapable of enforcement on the ground of fraud or mistake, without a trial with Martin? It does not answer the objection to say the plaintiff cannot recover without an agreement by the defendants to pay, because the answer is they have made one by their deed. That covenant must be nullified to have the defense succeed, and can that be done without hearing Martin? He is interested, and interested now in its enforcement; because if this action fails, the court invalidates his agreement without hearing him. In regard to the second point, is it tolerable that a party, who has taken a deed deliberately, who can read and understand (one of the defendants was educated as a lawyer, and the other is one accustomed to deal in real estate), and has abundant opportunity so to do, can be heard to say, " I have never promised, as the writing evinces." Certain it is, if a person is able, by his own testimony, under such circumstances, to prove a fraud or mistake, the establishment of a rule which enables him so to do, will lead to infinitely more fraud than will be thereby suppressed in some exceptional cases. Waiving, however, the discussion of these legal questions, let us look at the evidence.

Mr. Titus and Martin claim that the assumption of the mortgage was no part of this agreement with Martin; that Stott had gone, about 11 o'clock A. M. of the day the deed was delivered, to the office of the Messrs. Parker to examine the conveyance, and on such examination found there was no clause then in the deed as it now contains; that when the deed was delivered by Mr. Walsh (then a clerk in office of Messrs. Parker) and Mr. Martin, it, and others delivered at same time, were only examined so far as to see the numbers of the lots were right, and the same was put on record without further examination.

Opposed to this evidence of the defendant is:

First. The deed itself, formally accepted and put on record, and containing, in clear and legibly written words, the covenant relied upon. This is very high evidence certainly of the agreement, and should not be lightly disregarded nor set aside except upon clear and convincing proof (*Nevins* agt. *Dunlap*, 33 *N. Y.*, 680 ; *Pennell* agt. *Wilson*, 2 *Robts.*, 509 ; *Lyman* agt. *U. S. Ins. Co.*, 17 *Johns.*, 376).

Second. John W. Walsh, formerly a clerk in the office of Messrs. Parker, and Amasa J. Parker, Jr., testified that some months before the execution of the deed to the defendants, a large number of conveyances for different pieces of property owned by George Martin and located in the neighborhood of Martinsville, were prepared, the consideration and grantee's name in blank, and each deed contained the clause assuming the mortgage owned by the savings bank, and of those deeds this was one. Against the clear evidence, then, of these witnesses, is only the evidence of the defendant Stott, that at 11 o'clock on the morning of the day of the delivery of the deed, it did not contain the assumption clause. Contradicted as Stott is by two witnesses upon this point, and by the further fact of the gross improbability that gentlemen of the character and standing of the Messrs. Parker and their clerk would have inserted the assumption clause after examination, Mr. Stott's statement cannot be believed.

Third. Walsh and Martin prove that this deed and several others were left with Titus, at his office, about 12 o'clock. They then went to a hotel and got dinner, leaving the deeds. On their return, which was in about half an hour (Stott was then in the office of Titus), considerable conversation took place between Titus and Stott, the latter opening and reading the deeds. This interview lasted from a quarter to 1 to 2 o'clock. For the space of two hours, then, the defendants had the deeds for examination, and they did examine them. As this evidence is more natural and reasonable than the evidence of Stott and Titus, it is accepted as true.

Fourth. Several pieces of property conveyed at same time to defendants by Martin, and containing a similar covenant, have all been conveyed to others by various and separate deeds containing the same covenant on the part of their several grantees. Some of these deeds were prepared in the office of the defendant Titus and copied by a clerk who admits that he could not, without instructions, have altered and changed the language of the covenant, as it is in several instances, without directions and a form. It is impossible to believe the defendants were ignorant of the contents of the conveyances they gave as well as of those received.

Without any further discussion of the questions of fact which this case involves I think the clear weight of evidence is that the defendants accepted the deed with full knowledge, and that the plaintiff is entitled to judgment.