JACKSON, *ex dem.* D. RUSSELL AND OTHERS, *against* CROY.

THIS was an action of *ejectment,* for land, in *Petersburgh,* tried at the *Rensselaer* circuit, in *June* last.

The plaintiff gave in evidence a deed, dated 31st *January,* 1805, from *Abraham Ten Broeck* to *Abel Russell,* for the farm, of which the premises in question are part, and that *Russell* took possession under that deed, and continued in possession until *June,* 1811. The plaintiff also gave in evidence an exemplification of the record of a judgment in favour of *Samuel Starr* and *Jacob Houghton,* against *Abel Russell,* for 250 dollars of debt, and eight dollars damages, docketed in this court the 17th of *October,* 1807 ; and a writ of *fieri facias* issued thereon to the sheriff of *Rensselaer,* and a *deed* from the sheriff of that county, dated the 5th of *June,* 1811, to *David Russell,* one of the lessors of the plaintiff, and the son of *Abel Russell.* The sheriff's deed, after setting forth the judgment and execution, and the lands seised by virtue thereof, contained the following exceptions : " *Excepting* one acre heretofore conveyed by the said *Abel Russell* to *Potter Maxan,* on which the shop and dwelling house of the said *Maxan* now stands ; and, also, except one acre conveyed to *John D. Croy,* on which the house and store of the said *Croy* now stands ; and, also, except the lot on which the house of *A. H. Tift* now stands, &c. ; also, half an acre conveyed to *D. M. Silliman ;* also, half an acre conveyed to *George Gardner,* the 2d, on which his house now stands ; also, except a small lot, about a quarter of an acre, adjoining to *Silliman's* lot."

It appeared, from the testimony of *Anthony Hoffman,* who surveyed the land, that the premises in question did not fall within any of the exceptions in the sheriff's deed, and that the premises in question were a part of the lands conveyed by *Ten Broeck's* deed to *Abel Russell,* and are included in the sheriff's deed to *David Russell.*

It appeared, also, that, before the commencement of this suit, and before the defendant went into possession of the premises, he applied to *David Russell* to purchase them, and re-

Parol evidence is inadmissible to show that part of the premises contained in a deed were intended to be excepted from the grant.
A deed will not be declared void, on the ground of fraud or mistake, because the whole of it was not read by the grantor.
The repeated application of the defendant in ejectment to the plaintiff's lessor, to purchase the premises in question from him, affords a presumption that he came into possession under the lessor of the plaintiff.

quested to have the refusal, whenever they should be sold; and that the defendant, before the commencement of this suit, disclaimed holding under *David Russell.*

*David Russell* was present at the sheriff's sale, and stated that his father, *Abel Russell,* had sold certain lots, which he wished to have excepted from the sale; "that it was not intended to sell any part of the lands which his father, *Abel Russell,* had sold;" and the sheriff made a similar declaration.

The sheriff testified, that certain exceptions were made by him on the sale, according to the directions from *David Russell;* but, whether the premises in question were among the exceptions, he did not know; he thought that the name of *Griffis* was mentioned as the owner of one of the excepted lots. There were a number of bidders, and the property was struck off to *David Russell,* the highest bidder, for 1,400 dollars. A blank deed was then presented by *David Russell,* which was filled up with the name of the purchaser and the consideration, and executed by the sheriff, without further examination by him, except to see that the execution was properly described.

It was proved that, at the time of the sale, *Jasper Griffis* owned the lot excepted in the sheriff's deed, described as being half an acre, conveyed by *Abel Russell* to *George Gardner,* the 2d, and that *Griffis* was then in possession of it. The defendant produced a deed, dated the 23d of *October,* 1810, from *Abel Russell* to *Peter Griffis* and *Samuel Phillips,* conveying an estate in fee, which included the premises in question; and, also, a deed from *Samuel Phillips* to *Jasper Griffis,* dated the 23d of *November,* 1813, covering the premises in question.

The judge charged the jury, that, in his opinion, the defendant had failed to impeach the sheriff's deed, on the ground of mistake, or fraud; and that the plaintiff had shown a clear title in *David Russell;* and, besides, the defendant had, by repeated acts, recognised *David Russell* as owner of the premises in question, sufficient, in his opinion, to afford a strong presumption that he had received possession from him. Under this charge of the judge, the jury found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial.

*C. Mitchell,* for the defendant.

*Crary,* contra.

YATES, J., delivered the opinion of the court. The judgment given in evidence against *Abel Russell,* was docketed in 1807. The execution had regularly issued on it, so that the sale made by the sheriff, and the deed given by him, in *June,* 1811, to *David Russell,* vested the title to the premises in him. That title cannot be affected by the deed of *Abel Russell,* to *Griffis* and *Philips,* executed in *October,* 1810, being subsequent to the docketing of the judgment upon which the sheriff's deed to *David Russell* is founded, unless that deed has been obtained from the sheriff under circumstances of fraud, which would render it void.

The parol proof received on the trial, was not to explain any ambiguity in the sheriff's deed, but is directly contradictory to it, and, therefore, inadmissible. There was no uncertainty as to what was conveyed by it. The premises in question were evidently included and described in the deed, and resorting to this sort of extrinsic testimony, to show that the premises ought not to have been included, is contrary to the established rules of evidence, in relation to instruments of this description. But admitting that the evidence could be received on the ground of fraud or mistake; it neither shows fraud nor imposition by *Russell,* one of the lessors, nor a mistake in the sheriff; for it does not appear that the premises were excepted at the sale. There is nothing stated explicitly on the subject. The sheriff declares he has no distinct recollection about it. He remembers that *David Russell* stated, that his father, *Abel Russell,* had sold certain lots, which he wished to have excepted from the sale, and said it was not intended to sell any part of the land which his father had sold; but whether a memorandum, enumerating the excepted lots, was handed to him, or not, he does not remember. He recollects that certain exceptions were made by him on the sale, according to the directions he had received from *David Russell;* but whether the premises in question were excepted, he does not know. The manner of executing the deed, as stated by him, may well have taken place, and still the whole be fair and *bona fide.* The sheriff might have read the whole deed, if he pleased; for he says he examined a part of the deed; and because he did

not examine the residue, can it be tolerated, that the person who drew and presented it must be subjected to the imputation of fraud upon him? This cannot be. We are bound to consider the transaction to have been conducted in good faith, unless the contrary appears. It is evident that no part of the testimony will warrant the inference that fraud was practised by *Russell.*

The repeated acts of the defendant, recognising the plaintiff's title, by applications to purchase from him, both before and after he entered into possession of the premises, afforded the strongest reason to presume that the defendant was in possession under *David Russell.* We are accordingly of opinion that the plaintiff ought to have judgment.

Judgment for the plaintiff.